**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

DONALD HOUSE,

     Plaintiff,

v.                                  Civil Action No 1:07-CV-10

METAL TRANSPORTATION SYSTEMS, INC.,

     Defendant.

**MEMORANDUM OPINION AND ORDER**
**AND**
**ORDER GRANTING INJUNCTIVE RELIEF**

**I.**
**Procedural History**

Donald House ["Mr. House"] filed this civil action against his former employer, Metal Transportation Systems, Inc., ["Metal"] on January 22, 2007 [DE 2] seeking compensatory and exemplary damages and attorneys fees and costs for: wrongful discharge in violation of West Virginia public policy wrongful discharge law; failure to pay wages under the West Virginia Wage Payment & Collection Act [W.Va.Code §21-5-1 *et seq.*]; discrimination and retaliation against a veteran in violation of the Uniformed Services Employment and Reemployment Rights Act ["USERRA"][38 U.S.C. §4301 *et seq.*]; and for injunctive relief.

The Clerk issued a summons against Metal on January 23, 2007 [DE 3]. House's counsel filed a return of service reflecting the summons was delivered via certified mail to The UPS Store #5012 at 6701 Manlius Cntr. Rd. [same address number and road of Metal Transportation Systems, Inc. as provided in the certified mail receipt] on January 26, 2007. Metals did not sign for receipt of the certified mailing. [DE 4]. On May 1, 2007 the Clerk reissued the summons and/or issued a second summons against Metals: c/o Mark R. Longshore, President at 1850 County Route 1,

Oswego, NY 13126 and c/o Mark R. Longshore, President at 2319 S. Foothill Dr., Suite 280, Salt Lake city, UT 84109 [DE 5]. House's counsel filed a return reflecting the summons was delivered via certified mail to Metal c/o Mark R. Longshore, President at the 1850 County Route 1, Oswego, NY 13126 address and was signed for by a "Pam Kinney" on May 7, 2007 [DE 6]. The summons via certified mail to Metal c/o Mark R. Longshore, President at 2319 S. Foothill Dr., Suite 280, Salt Lake city, UT 84109 was returned undelivered and unexecuted on May 21, 2007 [DE 7]. The Clerk reissued the summons and/or issued a third summons against Metals: c/o Mark R. Longshore, President at P.O. Box 702287, West Valley City, UT 84170 on May 21, 2007 [DE 8].

On August 20, 2007 the District Judge entered a Show Cause Order directing Plaintiff to show cause why service of process had not be affected on Metals within 120 days of the filing of the complaint as required under F.R.Civ.P. 4(m) [DE 9].

Apparently in response to the District Judge's Show Cause Order, House's counsel filed a return on August 21, 2007 reflecting the summons was delivered via certified mail to Metal c/o Mark R. Longshore, President at the P.O. Box 702287, West Valley City, UT 84170 address by certified mail signed for by "Shannon Bell" on June 4, 2007 [DE 10].

On September 4, 2007 House, by counsel, filed his response to the Court's Show Cause Order stating that Metals had been served in accord with F.R.Civ.P. 4(e) at its New York and Utah locations within 120 days of the filing of the complaint; requesting an additional 60 days to make a second service on Metals pursuant to New York law through the New York Secretary of State [DE 11]. By Order dated September 12, 2007 the Court granted House's request for additional time to serve the corporate defendant, Metal, and set the date for such service to be completed as November 13, 2007 [DE 12].

On September 20, 2007 and again on September 25, 2007 additional summonses were issued

and / or reissued by the Clerk, to wit: a summons to Metal Transportation Systems, Inc. at 1614-0 Union Valley Rd., Suite 600, West Milford, NJ 07480 [DE 13]; a summons to Metal Transportation Systems, Inc. at 6701 Manlius Center Rd., East Syracuse, NY 13057 [DE 14]; and a summons to Metal Transportation Systems, Inc. at c/o Mark R. Longshore, President, 1850 County Route 1, Oswego, NY 13126 [DE 15]. The summons to Metal at 6701 Manlius Center Rd., East Syracuse, NY 13057 was returned unexecuted on October 5, 2007 [DE 16]. The summons to Metal at: c/o Mark R. Longshore, President, 1850 County Route 1, Oswego, NY 13126 was returned unexecuted October 29, 2007 [DE 17]. The summons to Metal at 1614-0 Union Valley Rd., Suite 600, West Milford, NJ 07480 was returned unexecuted noting the address provided was for an UPS Store and the UPS employee could not verify whether or not Metal was an UPS mailbox holder [DE 18].

On April 22, 2008 Janet L. Meal certified she served a copy of the complaint "to Roy Butterfield, Notice of Process Agent for Metal Transportation Systems, Inc., at 2369 W. Trevor Lane, Taylorsville, UT 84118, via certified mail signed by Butterfield on April 11, 2008 attaching thereto the signed certified mail receipt [DE 20].

On May 5, 2008 a summons was issued by the Clerk against Metal c/o "Roy Butterfield, 2369 W. Trevor Lane, Taylorsville, Utah 84118 [DE 21]. Mark Nosack certified he personally served the summons and complaint in at the stated Utah address on May 16, 2008 [DE 22].

House filed Plaintiff's Request To Clerk For Entry of Default pursuant to F.R.Civ.P. 55(a) on May 27, 2009 [DE24]. In the accompanying affidavit, counsel for House averred Metal was served with a summons and a copy of the complaint on January 26, 2007, May 7, 2007 and May 30, 2007 and upon Metal's service of process agent on May 16, 2008 and that Metal failed to answer or otherwise defend.

The Clerk entered default against Metal for failure to file a claim or answer or otherwise

defend on May 27, 2009 [DE 25].

On June 8, 2009 House filed his Motion For Default Judgment By The Court in the sum of $50,189.37 plus interest and for such other and further relief deemed just and proper by the Court [DE 26].

On July 24, 2009 House filed his Amended Motion for Default Judgment By The Court with supporting exhibits [DE 36] seeking "$33,660.00 for his WVWPCA claim; $13,378.00 for his USERRA claim; $9,840.37 for his attorney fees and costs; plus prejudgment interest on the amounts at 10% per annum; and an amount to be determined by the Court for Damages for emotional distress, humiliation and embarrassment and for such other and further relief as this court deems just and proper." [DE 36]. On July 28, 2009 House certified copies of the Amended Motion For Default Judgment by the Court and memorandum were served on Defendant through Roy Butterfield at 2369 W. Trevor Lane, Taylorsville, Utah 84118 and Ronald A. Millman at Scolaro, Shulman, Cohen, Fetter & Burstein, P.C. at Crossbridge Office Park 2000 Winton Road South, Suite 301 Rochester, Ny 14618  DE 38].

July 29, 2009 House executed a consent to jurisdiction by the undersigned Magistrate Judge and the District Judge referred the matter to the undersigned "to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. §636 (c) and Fed.R.Civ.P. 73." [DE 39].

The matter was set for hearing and a hearing was held on August 7, 2009 to consider Plaintiff's Motion for Default Judgment [DE 26] and Plaintiff's Amended Motion for Default Judgment [DE 36]. [DE 40].

During the hearing of August 7, 2009 it was disclosed that both House and Metal had filed for bankruptcy protection. From the testimony, it was apparent House and his counsel were unsure whether House had listed his contingent and unliquidated claim against Metal in his bankruptcy; had

the permission of his bankruptcy trustee to bring and maintain the within civil action; or whether the automatic stay of section 362 of the Bankruptcy Act had been lifted to permit the within civil action to proceed. It was also apparent that House's counsel were unsure when the Metal bankruptcy had been filed and whether the automatic stay of section 362 would preclude the within action from moving forward. Having raised the above issues with counsel, by Order dated August 10, 2009 the Court directed House and his counsel to supply the requested information within 30 days [DE42].

After several extensions of the court ordered deadline [DE 44, 47 and 52], house filed his Post-Hearing Proffer with attachments [DE48], Supplemental Exhibit J [DE 49], Supplemental Statement Regarding Attorney Fees and Costs [DE 51] and faxed a copy of an Order Authorizing Employment of Special Counsel (Order authorizing the bankruptcy trustee to employ Allan N. Karlin & Associates as counsel to prosecute the within civil action) dated January 4, 2010 and entered by the United States Bankruptcy Court For The Western District Of Oklahoma [DE----------].

## II.
## Findings of Fact

House, a married man with children, started driving over the road trucks hauling structural steel, steel and coils of steel in 1999 [Tr. 8].

House started driving an over the road truck for Metal right after New Years Day 2002 [Tr. 8]. His starting rate of pay was $.33 cents per mile because he had previous experience as an over the road truck driver [Tr. 8]. His initial duties were to haul aluminum from Alcan and Alcoa Manufacturing to places within the continental United States. He worked out of the company headquarters located in Oswego, New York [Tr. 9].

After a few weeks on the job, Metal made House a trainer of new truck drivers. House would pick up a trainee at the Oswego, New York headquarters and train him or her to drive the

truck, load and unload the freight, secure the freight and to do the necessary paperwork. As a trainer he was paid $03. per mile driven with a trainee over and above his own mileage for a total of $.36 per mile driven. It typically took a month to six weeks to train a new driver [Tr. 9]. For a year after a new driver's training was completed, House would continue to receive $.01 per mile driven by the new driver. During 2002 House trained 6 new drivers for Metal [Tr. 10].

October 24, 2002 Metal filed a voluntary petition Chapter 11 bankruptcy in the US Bankruptcy Court for the Northern District of New York (Case no. 02-66483-6-sdg) [DE 48 p. 2]. Metal did not list House as a creditor or claimant. House's claims against Metal did not exist at the time of the bankruptcy filing inasmuch as they did not arise until November 2004 when House returned from Iraq and sought his old driving job from Metal and on January 25, 2005 when House was discharged without cause by Metal [DE 48 p. 2]. December 5, 2005, the Chief United States Bankruptcy Judge for the Northern District of New York entered an Order Confirming Chapter 11 Plan of Debtor [Metal] [DE 48 p. 2].[1]

House entered the Army while he was in high school. However, he broke his leg and was medically discharged during his senior year. He re-enlisted in the reserves in 1995 [Tr. 11]. In late November or early December 2003 House received orders to report for active duty at the 630th Truck Company in Washington, PA on December 7th. House was on the road in St. Joseph's, Missouri with a load when he received the call to report within 72 hours "full battle-rattle." He called Metal and notified them of his being called up and that he would not be able to pick up his next load. House then drove to Oswego, New York; dropped off his truck at company headquarters; drove home to Clarksburg, West Virginia to pack; and then reported for duty at Washington, PA [Tr. 10-

---

[1]Whether House's claims or this judgment against Metal is barred by the Metal Bankruptcy is outside of the jurisdiction and thus the consideration of this Court.

12]. After initial in country training and pre-deployment proceedings, on February 12, 2003 he was sent to Iraq. His called service time was from December 7, 2003 to October 31, 2004. He was returned stateside for treatment of combat related injuries [Tr.12-13]. In September 2004 House signed a declaration of treatment by which he permitted the Veteran's Administration to take over his treatment so he could return to driving truck for Metal {Tr.14-15].

He contacted Metal on the date he signed the declaration of treatment advising Joe Juneberry of his intent to return to work within the next two weeks [Tr. 16]. House was told he had been terminated from Metal's system and that he no longer worked for them. House explained that he had a right to his old job and pay under the Soldiers and Sailors Relief Act. Metal told him he could have his job back but that he would have to start as a new hire. House threatened legal action. Metal then told him to come back to work and not to worry about starting at as a new hire because it would be taken care of [Tr. 17]. Once House got to Oswego, New York, he was treated like a new hire. His medical insurance was not started immediately. He was paid a new hire rate. He had to go through orientation again. When House complained he was told to get through orientation and the rest would work itself out [Tr.18].

In the third week of January 2005 [January 25, 2005] House was delivering a "hot load" to Oswego, New York from Russellville, Kentucky when his truck developed serious mechanical issues. [Tr. 18]. Metal instructed him to try to get the truck to a Catepillar dealer (Beckwith Machine) in Bridgeport, West Virginia. He turned the truck into Beckwith for repairs on Friday evening and went home [Tr. 18].

House checked on the repairs to the truck frequently. Eventually he learned that the truck was repaired but Metal and Beckwith were embroiled in a dispute over payment and Beckwith refused to release the truck [Tr. 19-20]. Being without work and a paycheck for more than two

weeks [19 days], House called Metal and complained that he needed to receive his down time pay and about the way Metal had started him as a new hire in violation of the law. Metal employee Phil handed the phone to Ilene Collins who told House it was not his place to get involved between Beckwith and Metal and that his resignation had been accepted [Tr. 19-20]. House did not resign [Tr. 21]. The Court calculates House's termination date at February 13, 2005.

Post termination House applied for unemployment compensation. Metal unsuccessfully contested House's application. Thereafter, House applied for work as a truck driver with approximately 20 reputable trucking companies. After being repeatedly turned down for employment, House had a friend run a DAC report with the Federal Motor Carrier Safety Administration which came back that he had abandoned his load while working for Metal [Tr. 21-22].

In 2005 House found a job working for Buccaneer Enterprises locally hauling lumber and plywood at substantially lower rates of pay than he had been making with Metal [Tr. 22]. House tried to improve his position as an over the road truck driver by taking new and better jobs when they became available.

Metal filed its final bankruptcy report on July 5, 2006 seven months following approval of its Chapter 11 plan and House's claims were not listed in the Plan or the final report [DE 48 p. 4 fn. 4]. While House's claims matured as late as January 25, 2005, the subject suit was not filed until 2007. House did not file any notice of claim in the Metal Bankruptcy [DE 48 p. 5].

In 2006, even though House had not planned to re-enlist, he felt he financially had no choice. He re-enlisted in the Army to obtain better benefits and "okay" pay with post housing. He was assigned to Fort Sill, Oklahoma which required him and his family ( wife and four children ages 17, 15, 4, and 20 months) to move [Tr. 21-22].

House and his wife filed for Chapter 7 bankruptcy protection on February 23, 2009 [DE 48 p. 6]. Initially House did not list the pending claims against Metal in his petition.

House remained in the Army at Fort Sill until July 27, 2009 when he was discharged due to a compression fracture of his neck requiring surgery for injuries suffered in a simulated war exercise [Tr. 23].

House amended his bankruptcy petition on September 21, 2009 by listing the claims against Metal in both his amended Schedule B and his amended Statement of Financial Affairs [DE 48 p. 26-7]. Since then the Trustee in House's Bankruptcy case approved the retention of current counsel and authorized their continued prosecution of this civil action [DE 48 p. 7].

### III.
### Discussion

**Jurisdiction**

This Court has jurisdiction over House's USERRA claim. 38 U.S.C. §4323(b)(3).

**Venue**

Ordinarily, in federal court, venue is proper wherever the corporate defendant has sufficient contacts to support personal jurisdiction, "except where otherwise provided by law." 28 U.S.C. §1391.

38 U.S.C. §4323(c)(2) provides otherwise, to wit: "In the case of an action against a private employer, the action may proceed in the United States district court for any district in which the private employer of the person maintains a place of business."

Thus the exclusive venue provision of 38 U.S.C. §4323(c)(2) trumps the general venue statute and governs House's USERRA claim.

With respect to the venue question, does the fact that House lived, drove Metal's truck hauling freight through the Northern District of West Virginia and deposited the truck at Beckwith

Machine in the Northern District of West Virginia for repairs immediately prior to his discharge constitute "maintenance of a place of business?"

In Shufelt v. Abbott Laboratories (unreported)(W.D.Ky. 2005 WL 1653596) District Judge McKinley granted Defendant's Motion to Dismiss For Lack of Proper Venue on the ground that Defendant's use of individual sales representatives who worked out of their homes and report to district managers who also worked out of their homes did not constitute "a place of business" in the district as required by 38 U.S.C. §4323(c)(2).

In Johnson v. General Dynamics Information Technology, Inc., (D.N. H. 2009 WL 4884034), relying in part on Shufelt, *supra*, the Court transferred the claims on the grounds that General Dynamics' had 9 employees, 8 of which worked out of their homes and 1 of which worked out of the New Hampshire Department of Transportation and therefor did not have a "place of business" within the plain meaning of 38 U.S.C. §4323(c)(2). The Court also found that courts had been reluctant to apply the pendent venue doctrine in cases where to do so would override the limitations of the specific venue provision and accordingly determined that transfer of all of the claims to Massachusetts where General Dynamics admittedly maintained offices was most appropriate.

The facts of the instant case are not in dispute with respect to the USERRA venue issue. Metal did not maintain any offices within the Northern District of West Virginia. The fact that House lived in drove freight using a Metal truck and trailer in and through the Northern District of West Virginia and deposited the truck for repairs at the Beckwith Machine facility located within the Northern District of West Virginia is insufficient to establish that Metal maintained offices within the Northern District of West Virginia.

But for Metal's failure to respond to House's suit and file an answer or other affirmative

defense including but not limited to a motion to dismiss for improper venue, venue within the Northern District of West Virginia would not exist under 38 U.S.C. §4323(c)(2) and all claims, including the pendent claims, would be subject to dismissal.

However, Metal did not file any motion to dismiss or otherwise appear in response to House's complaint. Improper venue is generally considered as an affirmative defense that must be raised under F.R.Civ.P. 8(c). If a defendant fails to assert its objection to venue by defaulting in an action by not timely responding to the complaint, defendant waives improper venue. Hoffman v. Blaski, 363 U.S. 335, 343 (1960). While it may not be error for the Court to consider improper venue on its own, the entry of a Clerk's default in this case would appear to preclude the Court's *sua sponte* consideration of the issue at the present juncture in the case. see Stjernhom v. Peterson, 83 F.3d 347, 348 (10th Cir. 1996); Costlow v. Weeks, 790 F.2d 1486, 1488 (9th Cir. 1986); and Lipofsky v. New York State Workers Compensation Bd., 861 F.2d 1257, 1258 (11th Cir. 1988). In the absence of Metal raising the issue, this Court will not consider it on its own.

Inasmuch as the Court has decided not to *sua sponte* consider lack of venue for the reasons stated, there is no need to consider House's claim that his driving a route which included Fairmont, West Virginia constitutes maintenance of a place of business in the Northern District of West Virginia for statutory venue purposes.

Accordingly, the Court clearly having jurisdiction, will proceed to decide the issues raised by House's Complaint.

**USERRA**

The Uniformed Services and Employment and Reemployment Rights Act (USERRA), 38 U.S.C. §4301, *et seq.*, prohibits "discrimination against persons because of their service in the uniformed services." 38 U.S.C. §4301(a)(3). In particular, the act provides:

**(a)** A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.

**(b)** An employer may not discriminate in employment against or take any adverse employment action against any person because such person (1) has taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter. The prohibition in this subsection shall apply with respect to a person regardless of whether that person has performed service in the uniformed services.

**(c)** An employer shall be considered to have engaged in actions prohibited--

**(1)** under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service; or

**(2)** under subsection (b), if the person's (A) action to enforce a protection afforded any person under this chapter, (B) testimony or making of a statement in or in connection with any proceeding under this chapter, (C) assistance or other participation in an investigation under this chapter, or (D) exercise of a right provided for in this chapter, is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such person's enforcement action, testimony, statement, assistance, participation, or exercise of a right.

**(d)** The prohibitions in subsections (a) and (b) shall apply to any position of employment, including a position that is described in <u>section 4312(d)(1)(C)</u> of this title.

Section 4312 provides in pertinent part:

**(a)** Subject to subsections (b), (c), and (d) and to <u>section 4304</u>, any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter if--

**(1)** the person (or an appropriate officer of the uniformed service in which such service is performed) has given advance written or verbal notice of such service to such person's employer;

**(2)** the cumulative length of the absence and of all previous absences from a position

of employment with that employer by reason of service in the uniformed services does not exceed five years; and

**(3)** except as provided in subsection (f), the person reports to, or submits an application for reemployment to, such employer in accordance with the provisions of subsection (e).

**(e)(1)** Subject to paragraph (2), a person referred to in subsection (a) shall, upon the completion of a period of service in the uniformed services, notify the employer referred to in such subsection of the person's intent to return to a position of employment with such employer as follows:

**(D)** In the case of a person whose period of service in the uniformed services was for more than 180 days, by submitting an application for reemployment with the employer not later than 90 days after the completion of the period of service.

**(2)(A)** A person who is hospitalized for, or convalescing from, an illness or injury incurred in, or aggravated during, the performance of service in the uniformed services shall, at the end of the period that is necessary for the person to recover from such illness or injury, report to the person's employer (in the case of a person described in subparagraph (A) or (B) of paragraph (1)) or submit an application for reemployment with such employer (in the case of a person described in subparagraph (C) or (D) of such paragraph). Except as provided in subparagraph (B), such period of recovery may not exceed two years.

Section 4313 provides in pertinent part:

## § 4313. Reemployment positions

**(a)** Subject to subsection (b) (in the case of any employee) and sections 4314 and 4315 (in the case of an employee of the Federal Government), a person entitled to reemployment under section 4312, upon completion of a period of service in the uniformed services, shall be promptly reemployed in a position of employment in accordance with the following order of priority:

**(2)** Except as provided in paragraphs (3) and (4), in the case of a person whose period of service in the uniformed services was for more than 90 days--

**(A)** in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, or a position of like seniority, status and pay, the duties of which the person is qualified to perform;....

The Court concludes: House was employed by Metal to the time he was called up for active

duty in the Army; House gave Metal verbal notice of his being called up; House notified Metal of

his return stateside and his pending discharge from active duty service well within the time limits

provided for in Section 4313; House was capable of performing the duties of an over the road truck driver for Metal upon his discharge from active duty; Metal could have re-employed House as an over the road truck driver with the same or like seniority, status and pay House held prior to his call up and deployment to Iraq; House reapplied for the position of over the road truck driver that he held with Metal prior to his being called up to active duty; Metal did not return House to his former position of employment with the same or like seniority, status and pay House held prior to his call up and deployment to Iraq; Metal offered no explanation or evidence why it was impossible or unreasonable or an undue hardship for it to re-employ House with the same or like seniority, status and pay House held prior to his call up and deployment to Iraq (38 U.S.C. §4312 (d)(1)(A)(B)(C) or (2)(A)(B)and (C); Metal's failure to return House to his former position of employment with the same or like seniority, status and pay was because he had left that position to fulfill his commitment to serve his country in the active service of Army in the Iraq War; Metals discharge of House was wilful and solely because House asserted his rights under USERRA at a time when his truck was being held by a repair facility in lieu of Metal's payment of the repair and storage bills and while House was complaining about Metal not reinstating him as an experienced driver at the same rate of pay he had before deployment, and while Metal was failing and refusing to pay House down time pay in accord with its written policies.

    The Court further concludes House trained six (6) new drivers in the year before he was deployed and that Metal did not pay House the $0.01 per trainee mile driven for Metal during the year following completion of said training in accord with its policy.

    The Court further concludes that: the Metal's truck House had been driving immediately before his discharge from employment suffered a mechanical failure; Metal directed House to drive the truck to Beckwith Machine in Bridgeport West Virginia for repairs; the truck was delivered to

and deposited with Beckwith as directed; the truck was repaired but not delivered to Metal because of a payment dispute between Beckwith and Metal; that House was idled by the repairs and payment dispute for 19 days before Metal terminated him; and Metal did not pay House the $50.00 per day breakdown pay it was required to pay pursuant to its policy manual.

The Court further concludes House was entitled to payment of his accrued vacation pay at the time of his discharge by Metal in accord with Metal's own policy manual; that House had accrued one weeks vacation at the time of his termination; and Metal did not pay House for his accrued vacation at any time during his employment or after his discharge from employment.

Upon House's return and discharge from active duty, in addition to re-employment in the same position with like seniority, status and pay, House was entitled to reinstatement of his health care plan pursuant to 38 U.S.C. §4317(b)(1) and his retirement benefit plan pursuant to 38 U.S.C. §4318.[2]

Upon consideration of the foregoing, the Court concludes House is entitled to recover USERRA compensatory damages from Metal in the sum of $9,550.00 plus pre-judgment interest thereon at the rate of 7% per annum from February 13, 2005.

**WVWPCA**

The West Virginia Wage Payment and Collection Act in effect on the date of House's discharge [W.Va. Code, §21-5-4] provides in pertinent part:

(b)     Whenever a person, firm or corporation discharges an employee, such person, firm or corporation shall pay the employee's wages in full within seventy-two hours.

(e)     If a person, firm or corporation fails to pay an employee wages as required

---

[2]Plaintiff offered no evidence on this element of damages, therefore no actual or derivative damages for failure to continue health care benefits is considered in this judgment.

under this section, such person, firm or corporation shall, in addition to the amount due, be liable to the employee for liquidated damages in the amount of wages at his regular rate for each day the employer is in default, until he is paid in full, without rendering any service therefor: Provided, however, that he shall cease to draw such wagers thirty days after such default.[3]

Metal did not pay House any wages after his January 2005 discharge. House was an employee of Metal at the time of discharge. House was discharged from his employment by Metal. Metal's own challenge to House's application for unemployment benefits claiming he was discharged for cause belies any possible claim Metal could make that House quit his employment. House was a resident of the State of West Virginia at the time of his discharge by Metal. Metal owes House 30 days liquidated damages based on his 2004 earnings [income earned between his end of October 2004 return to work for Metal and December 31, 2004 as shown by his Exhibit A to Amended memorandum DE 7] under the WVWPCA, Since House is limited by DOT regulations with respect to the hours he can drive, House's estimate that he worked 40 days of the 59 days that passed between October 31 and December 31 2004 is reasonable. It is further reasonable to calculate his per diem pay for that 40 day time from by dividing his total earnings for the period ($2,526.00) by 40.

Accordingly, the Court finds House is entitled to WVWPCA Liquidated Damages from Metal in the sum of $1,894.50, plus pre-judgment interest thereon at the rate of 7% per annum from February 17, 2005.

## LIQUIDATED DAMAGES

This Court had already concluded that Metal's failure to re-employ House post military deployment at the same position, pay and benefits he held pre-deployment and Metal's termination

---

[3]Plaintiff erroneously claimed he was entitled to treble damages as a result of Metal's failure to pay the wages due and owing within 72 hours of the discharge [DE 37, p. 9]. House modified his position correcting the error in DE 48, p. 12, FN. 11.

of House in violation of the provisions USERRA was willful[4].  Pursuant to 38 U.S.C. § 4323 (d)(1)(C) "[t]he court may require the employer to pay the person an amount equal to the amount referred to in subparagraph (B) as liquidated damages, if the court determines that the employer's failure to comply with the provisions of this chapter was willful."  Accordingly, House is entitled to USERRA Liquidated Damages from Metal in the sum of $9,550.00, plus interest thereon at the rate of 7% per annum from February 13, 2005[5].

**NON-ECONOMIC EMOTIONAL DISTRESS DAMAGES**

The West Virginia Supreme Court of Appeals held in <u>Ricottilli v. Summersville Memorial Hospital</u>, 188 W.Va. 674, 680 (1972),  425 S.E.2d 629, 635 "that an individual may recover for the negligent infliction of emotional distress upon a showing of facts sufficient to guarantee that the emotional damage claim is not spurious."  The West Virginia Court extended compensation for emotional distress to termination cases in <u>Harless v. First National Bank in Fairmont</u> 169 W.Va. 673, 690,  289 S.E.2d 692, 702 (1982) holding:  "[t]he tort of retaliatory discharge carries with it a sufficient indicia of intent, thus, damages for emotional distress may be recovered as part of

---

[4]Metal's decision to re-hire House as a new hire is evidence that it not only could rehire him on his return from active duty service, but that it needed drivers but was unwilling to return House to his pre-deployment pay and benefit status.  In short, Metal intended to cheat House out of his just pay and benefits under the law by returning him "on the cheap" to the new hire driver position.

[5]USERRA does not specifically provide for pre-judgment interest.  Pre-judgment interest in the absence of a statutory mandate in federal question cases is left to the discretion of the district court. <u>Quesinberry v. Life Insurance Company of North America</u>, 987 F.2d 10107, 1030 (4th Cir. 1993).  <u>WVa Code Chapter 56, Article 6, Section 31</u> provides for interest and prejudgment interest on judgments or decrees and calls for the same to be imposed on special and liquidated damages as of the date the cause of action accrues.  See also <u>Rodriguez v. Consolidation Coal Co</u> *supra* at 330, 685.  The administrative office of the West Virginia Supreme Court of Appeals has established the rate of interest on judgments and decrees for 2010 at 7%.  The Court finds this rate of interest within the ranges specified by 56-6-31 and reasonable.

compensatory damages." "The essence of the cause of action is the wrongful and deliberate discharge of the employee who chooses to exercise some substantial public policy right."

House's claims in this regard are similar to those of Rodriguez in Rodriguez v. Consolidation Coal Co., 206 W.Va. 317, 524 S.E.2d 672 (1999)(per curiam) wherein the West Virginia Supreme Court of Appeals upheld a Monongalia Circuit Court jury award for $75,000 against Consolidation Coal for terminating Rodriguez because he refused to be untruthful to state and federal investigators regarding a work site accident that caused the death of a fellow worker. House asserted his USERRA rights when Metal rehired as a new hire employee instead of the former experienced employee he had been before his military deployment and when Metal failed to pay him breakdown pay for delays caused by Metal's failure to pay for necessary repairs to the truck assigned to House. When House complained about violations of his USERRA rights, Metal fired him.

Similar to Rodriguez House testified: he applied and had to fight his former employer for unemployment compensation benefits with Metal claiming falsely that House had voluntarily quit his job; he applied to 20 or more companies as an experienced hauler of structural steel; he was repeatedly turned down for employment because the companies had been told through reports Metal had publicly filed that he had abandoned his load and those companies were not ready to hire a driver who had abandoned a load and because companies do not like to hire people who appear "to jump around from job to job" [DE 42, p. 22, 35]; he took a substantially lower paying job driving for Buccaneer Enterprises because he felt he had not choice; he was embarrassed because he could not adequately provide for his family as he had in the past; he ultimately went back into the Army because he felt he did not have a choice and because it provided good benefits, okay pay and provided post housing [DE 43, p. 22]; his credit got worse because he was not making the same money he had been previously making with Metal but his bills were the same [DE 42, p. 35]; it

became financially hard at home; "it was stressful between me and my wife and children [DE 42, p. 35]; it was very difficult on the family to uproot two high school students and take them from a very small town to a very large town and resulted in a big adjustment and a lot of problems with school; it was stressful on House requiring him to go through therapy; [DE 42, p. 36]; he and his wife had some marital problems, parenting issues with the children who wanted to lash out and do things that they thought they were missing out on [DE 42, p. 36]; was constantly fighting about money and the kids wanting things that the family could not afford [DE 42, p. 44]; ultimately had to file bankruptcy [DE 42, p. 44]; his wife left him twice [DE 42, p. 44]; and he was diagnosed with a non-combat related stress disorder by the military [DE 42, p. 44].

There is no evidence to suggest House's testimony concerning the emotional distress and damages he sustained as a result of his wrongful termination and following treatment by Metal was "sparse" or "spurious". *Id.* 681.

Accordingly, Metal is liable to House for non-economic emotional distress damages in the amount of $139,000.00.

## ATTORNEYS FEES

38 U.S.C. §4323 (h)(2) provides: "In any action or proceeding to enforce a provision of this chapter by a person under subsection (a)(2) who obtained private counsel for such action or proceeding, the court may award any such person who prevails in such action or proceeding reasonable attorney fees, expert witness fees, and other litigation expenses."

W.Va. Code Ch. 21, Art. 5, Sec. 12(b) provides in pertinent part: "the court in any action brough under this article may, in the event that any judgment is awarded to the plaintiff or plaintiffs, assess costs of the action, including reasonable attorney fees against the defendant."

House prevails against Metal in this action on his USERRA claims and on his WVWPCA claims. House filed his Supplement Statement Regarding Attorneys Fees and Costs [DE 51].

West Virginia favors application of a 12 factor analysis in determining what to award in the way of attorney fees and costs: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal service properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the undesirability of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. Aetna Casualty & Surety Co. v. Pitrolo, 176 W.Va. 190, 342 S.E. 2d 156 (1986).

On review of the claims made for attorney fees and costs , the Court finds: the time and labor required was reasonable and necessary;[6] the case was somewhat unique inasmuch as this Court has not before been presented with a case where an employer so blatantly violated the rights of a soldier returning to his prior employment from war, thereafter ignored all process from the Court, all with the resulting complications of two bankruptcies; the case required the requisite skill of lawyers

---

[6]But for counsel having pro-actively reduced the time spent on research of bankruptcy law and facts related to this action, the Court would have done so because the issue was obvious and had not been appropriately addressed until the Court raised the issues during the August 7, 2009 hearing. Had counsel been diligent in investigating the facts, the results would have been the same. Both the Metal and House bankruptcies needed to be investigated whether done after the August 7, 2009 hearing or before. Failure to diligently pursue such an investigation before only caused additional work by way of supplemental memorandums by counsel and additional work by the Court. Similarly, counsel's lack of diligence with respect to changes in the WVWPCA and what act was applicable to the facts of this case also resulted in additional unnecessary work by counsel. That additional work appears to be accounted for by the pro-active reduction by 1/3 of the time spent on the bankruptcy matters.

familiar with employment law (common law and statutory law) from two separate jurisdictions in order to achieve a favorable and complete result for House; the time spent on House's case necessarily precluded counsel from being able to work on other legal matters; the hourly rates are consistent with those charged and approved for other employment law matters; the case was taken on a contingent fee contract basis recognizing that no money may ever be recovered; the work of the attorneys resulted in a fully favorable decision at this Court level; and the work required spanned a time frame of approximately three years.

Accordingly, the Court concludes that House is entitled to recover from Metal the sum of $24,059.50 in attorneys fees and costs.

## INJUNCTIVE RELIEF

Pursuant to The Real Truth About Obama, Inc. v. Federal Election Commission, 2009 U.S. App. LEXIS 17437 the Fourth Circuit, in light of the Supreme Court's opinion in Winter v. Natural Resources Defense Council, Inc., 129 S.Ct. 365 (2008) identified the new test for issuing a preliminary injunction:

> [T]he Plaintiff must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips on his favor, and that an injunction is in the public interest.

By virtue of this Opinion and Judgment, House clearly establishes the requirement that he be likely to succeed. The evidence clearly shows House has suffered irreparable harm in the absence of preliminary relief in that Metal fired House in violation of public policy and thereafter published lies concerning House having abandoned his load which poisoned the well of potential employers who would hire House as an over the road truck driver at wages and benefits commensurate with that received while working for Metal. Congress enacted USERRA because it had determined the public has an  interest in protecting members of the armed services from arbitrary dismissal from

employment because of their military service and West Virginia in enacting the WVWPCA recognized a public interest in employers paying wages and benefits due and owing in a timely fashion.  Finally, the evidence is clear that House did nothing wrong.  In spite of House's blameless conduct in serving overseas in war; returning to the States to resume work without delay; seeking his rights to be re-employed by his pre-deployment employer; working for his pre-deployment employer at wages and benefits which were less than he earned prior to his deployment until he was wrongfully discharged; Metal, without just cause, refused to give House his job back with pay and benefits similar to those earned pre-military deployment and thereafter wrongfully terminated him and then took affirmative action to prevent House from finding another comparable job in the trucking industry.  Accordingly the equities are all in House's favor.

The Court therefore concludes that House is entitled to an Injunction from this Court enjoining and prohibiting Metal from:

1.      Violating the terms and provisions of USERRA;

2.      Violating the terms and provisions of the WVWPCA;

3.      From making oral or written disparaging statements concerning House directly and indirectly to potential future employers, including but not limited to potential future employers engaged in over the road trucking; and

4.      From maintaining, promoting, continuing or permitting any previously made oral or written disparaging statements concerning House directly and indirectly to potential future employers, including but not limited to potential future employers engaged in over the road trucking.

# IV.
# Damages

House is entitled to damages from Metal calculated as follows:

1.    USERRA wages and benefits he would have earned but for Metal not returning him to his former employment status on discharge for active duty status in Iraq calculable and calculated as follows:

    a.    $7,800.00    unpaid training bonus based on the following formula:

        $0.01 cent per mile per House trainee driven for one year

        X

        6 House trained drivers in year prior to military call up

        X

        130,000 Average miles driven by trained at 2,500 miles per month

    b.    $950.00    unpaid breakdown pay based on the following formula:

        19 days truck broke down and in repair and in payment dispute

        X

        $50 per day breakdown pay required by Metal policy manual

    c.    $800.00    one week accrued vacation pay

        $9,550.00    unpaid wages and benefits due at the time of discharge together with 7% per annum interest thereon from February 13, 2005 until paid.

2.    USERRA Liquidated Damages

    $9,550.00    together with 7% per annum interest thereon from February 13, 2005 until paid.

3.    WVWPCA Liquidated Damages calculable and calculated as follows:

$1,894.50           2004 earnings of $2,526.00 divided by 40 days worked between October 31 and December 31, 2004 = $63.15 per day X 30 days = $1894.50 together with 7% per annum interest thereon from February 17, 2005 until paid.

4.     Non-Economic Emotional Distress Damages

$139,000.00           together with 7% per annum interest thereon from the date of judgment until paid.

5.     Attorneys Fees and Costs

$24,059.50           together with 7% per annum interest thereon from the date of judgment until paid.

## V.
## Award

Accordingly, this Court finds in favor of Donald House and grants him an award against Metal Transportation Systems, Inc. in the following amounts:

USERRA claim in the sum of $9,550.00 for unpaid wages and benefits due at the time of discharge together with 7% per annum interest thereon from February 13, 2005 until paid;

USERRA liquidated damages claim in the sum of $9,550.00 together with 7% per annum interest thereon from February 13, 2005 until paid;

WVWPCA Liquidated Damages in the sum of $1,894.50 together with 7% per annum interest thereon from February 17, 2005 until paid;

Non-Economic Emotional Distress Damages in the sum of $139,000.00 together with 7% per annum interest thereon from the date of judgment until paid; and

Attorneys Fees and Costs in the sum of $24,059.50 together with 7% per annum interest thereon from the date of judgment until paid.

## Injunction

Metal Transportation Systems, Inc. is prohibited and enjoined from:

1.    Violating the terms and provisions of USERRA;

2.    Violating the terms and provisions of the WVWPCA;

3.    From making oral or written disparaging statements concerning House directly and indirectly to potential future employers, including but not limited to potential future employers engaged in over the road trucking; and

4.    From maintaining, promoting, continuing or permitting any previously made oral or written disparaging statements concerning House directly and indirectly to potential future employers, including but not limited to potential future employers engaged in over the road trucking.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this Memorandum Opinion and Order and Order Granting Injunctive Relief to Counsel of Record herein and, pursuant to Federal Rule of Civil Procedure 58, the Clerk is further DIRECTED to enter judgment on this matter.

DATED: March 15, 2010

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE